UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

KEVIN O'NEILL,
    Plaintiff,

v.                                                               Case No. 16-C-425

UNITED STATES DEPARTMENT
OF JUSTICE, and
UNITED STATES MARSHALS
SERVICE,
    Defendants.

---

## DECISION AND ORDER

Kevin O'Neill, a federal prisoner who is representing himself, filed an action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, alleging that defendants failed to produce certain documents he requested under the law. ECF No. 1. I screened the complaint pursuant to 28 U.S.C. § 1915A and allowed him to proceed with a claim that the Federal Bureau of Investigation ("FBI") and the United States Marshal's Service ("USMS") improperly withheld a 56-page courtroom security plan, along with documents related to a murder plot, that plaintiff requested in 2015. ECF No. 4. I asked defendants to answer by July 20, 2016, and they instead filed a motion for summary judgment on that date. ECF No. 10. Plaintiff then filed a "motion for judicial notice and a motion to expand the record" on December 6, 2016. ECF No. 16. The motions are now fully briefed and ready for decision and order.

**I.  FACTS[1]**

Plaintiff is an inmate at the Oxford Federal Correctional Institution. Compl., ¶ 5. From early March 2000 to June 15, 2000, he was one of nine defendants on trial for racketeering at the Eastern District of Wisconsin. *Id.*, ¶ 8.  On or about April 15, 2000, individuals with the USMS lost a 56-page courtroom security plan that they created for the trial. *Id.*, ¶ 9. They apparently left the security plan in the lobby of the Hyatt Hotel where they were staying for the trial. *Id.*, ¶ 9.  A reporter published a story on the incident entitled "US Marshals lose copy of security plan in Outlaws federal racketeering trial: US Marshals blow their cover at racketeering trial of nine bikers; abandon 56-page security plan after agent leaves copy in hotel lobby." *See* http://www.putnampit.com/outlaws.html.  The news story stated that plaintiff arranged to have Assistant U.S. Attorney Paul Kanter killed for a certain amount of money and that the FBI had to assign in-district personal protection on Kanter as a result of the threat. *Id.*  Plaintiff was eventually convicted of racketeering, and he is still in prison for that conviction.

About fifteen years later, on April 28, 2015, plaintiff "became aware" that the USMS had lost the 56-page courtroom security plan and that a news story had been published on the incident with details regarding plaintiff's murder plot. *Id.*, ¶ 13.  That

---

[1] I take the facts in this section from defendants' proposed findings of fact (ECF No. 11 at 5-18), and plaintiff's sworn complaint (ECF No. 1), which I construe as an affidavit at the summary judgment stage. *Ford v. Wilson,* 90 F.3d 245, 246-47 (7th Cir. 1996). Where plaintiff disputes defendants' proposed findings of fact without evidentiary support, those facts are deemed undisputed for purposes of summary judgment. Fed. R. Civ. P. 56(c)(4); Civ. L. R. 56(b)(2)(i)(B) and (b)(4).

same day, plaintiff drafted a FOIA request letter addressed to Teresa L. Carlson at the FBI, and he served it on the USMS, the FBI, and the Executive Office for United States Attorneys. ECF No. 1-1 at 2-5. The letter stated:

> "I am requesting a copy of the 56-page document the reporter acquired for this story, as well as any other records the FBI maintains with a nexus to the alleged plot your agency conveyed to the U.S. Marshals Service which resulted in (then) Chief Deputy U.S. Marshal '[Joseph] Tindal direct[ing] the establishment of an in-district personal protection assignment on…[AUSA] Kanter,' as well as the implementation of other extreme security measures."

*Id.* at 2.

### **USMS Response to Plaintiff's FOIA Request**

In response to the plaintiff's FOIA request, the USMS Milwaukee office, who created the 56-page courtroom security plan for plaintiff's trial, searched their paper and electronic records for the documents plaintiff requested. Bordley Dec., ECF No. 11-1, ¶ 3. William E. Bordley, the Associate General Counsel and Freedom of Information/Privacy Act Officer for the USMS, provided a declaration with information on how and why the USMS stores records, and how they processed plaintiff's FOIA request in this case. *Id.*, ¶ 1.

Bordley explained that the USMS is responsible for "investigating fugitive matters," "executing warrants," and "receiving, processing, transferring and maintaining custody of federal prisoners." *Id.*, ¶ 4. To aid in carrying out these responsibilities, the USMS stores information in two electronic databases: the "Prisoner Processing and Population Management/Prisoner Tracking System" and the "Warrant Information Network." *Id.* Both of these databases are searched by an individual's name and/or his

personal identifiers, *i.e.*, the individual's date or place of birth, social security number, and prisoner registration number. *Id.*

The USMS also stores records on individual office computers. *Id.*, ¶ 6. USMS employees have access to an individual office computer where they can create and save documents, and they also have access to the office's "shared drive" which contains templates for employee use. *Id.*, ¶ 6. In 2000, office practice was to use a template and save "high-risk" security plans on an employee's individual office computer. *Id*. The office's individual computers were most recently replaced in 2006-07, and no copies of the old computer drives were saved. *Id.*

Finally, the USMS also has limited paper files. *Id.*, ¶ 5-6. Once the USMS completes its responsibilities relating to a particular trial, it does not save paper copies of the security plan for that trial, other than possibly as a template for future cases. *Id.*, ¶ 5.

In response to plaintiff's FOIA request, the USMS searched their Prisoner Processing and Population Management/Prisoner Tracking System and the Warrant Information Network using plaintiff's name and personal identifiers. *Id.*, ¶ 3. They found some information relating to plaintiff, but they did not locate a copy of the security plan. *Id.*, ¶ 4. They searched their individual computers and shared drives, but could not find a copy of the security plan. *Id*. USMS also searched their paper files but could not find a copy of the security plan. *Id.*, ¶ 6. By letter dated July 22, 2016, the USMS informed plaintiff that their search for records did not yield any responsive documents. *Id.*, ¶ 7.

**FBI Response to Plaintiff's FOIA Request**

In response to the plaintiff's FOIA request, the FBI also searched their paper and electronic records for the documents plaintiff requested. Hardy Dec., ECF No. 11-2, ¶¶ 7-8. David M. Hardy, the Section Chief of the FBI's Record/Information Dissemination Section ("RIDS") provided a declaration with information on the FBI's records keeping systems and details regarding the handling of plaintiff's FOIA request. *Id.*, ¶ 1.

The FBI maintains a Central Records System ("CRS") to aid in law enforcement, counterintelligence, and general administrative and personnel functions. *Id.*, ¶ 15. CRS encompasses records of the FBI Headquarters, FBI Field Offices, and FBI Legal Attaché Officers worldwide. *Id.*, ¶ 15. When a case file is opened in the CRS, the FBI assigns it a Universal Case File Number consisting of three parts: (1) the CRS file classification number, (2) the abbreviation of the FBI Office of Origin initiating the file, and (3) the assigned individual case file number for that particular subject. *Id.* To search the CRS, the FBI maintains "indexes" organized by individual (persons), by organization (organizational entities, places, and things) and by event (terrorist attack, bank robbery, etc.). *Id.*, ¶ 18. The FBI only indexes information considered relevant and necessary for future retrieval. *Id.* As a result, not every individual name or other subject matter is indexed in the CRS. *Id.*

In October 1995, the FBI implemented the Automated Case Support ("ACS"), and converted over 105 million CRS records into a single, consolidated case management system accessible by all FBI offices. *Id.*, ¶ 19. To search the ACS, the FBI uses the Universal Index ("UNI"), where individual names are recorded by date of birth,

race, sex, locality, social security number, address, and/or date of an event. *Id.*, ¶ 20. A UNI index search can locate FBI records created both before and after its 1995 implementation, in both paper and electronic format. *Id.* Currently, UNI consists of about 112.5 million searchable records and is updated daily with new indexed material. *Id.* Older CRS records not indexed in UNI as a result of the 1995 consolidation are searched by manual review of index cards. *Id.*, ¶ 24. A manual search is triggered: (1) if the individual searched was born before January 1, 1958; or (2) if an event searched occurred before January 1, 1973. *Id.*

In July 2012, the FBI implemented Sentinel, the FBI's "next generation case management system." *Id.*, ¶ 21. Sentinel functions in the same way as ACS, but did not replace ACS. *Id.* Information indexed in Sentinel is also replicated or "backfilled" to ACS. *Id.* However, all records logged on or after July 1, 2012 were created using Sentinel. *Id.*

In response to plaintiff's FOIA request, the FBI conducted a UNI index search of the ACS database on May 5, 2015. *Id.*, ¶ 23. The FBI used plaintiff's given name, Kevin Patrick O'Neil, and his alias, "Spike," to conduct the search. *Id.* They also searched for documents related to plaintiff using his personal identifiers. The search yielded some results, but none related to his FOIA request. *Id.* The FBI also manually searched index cards because plaintiff was born before January 1, 1958. *Id.* The manual search did not yield any records responsive to the request. *Id.*, ¶ 24.

On May 25, 2016, in response to this litigation, the FBI again searched the ACS database using the UNI index. *Id.*, ¶ 25. They included additional search terms such as

6

"AUSA Kanter Murder Plot," "AUSA Kanter," "Outlaw Murder Plot," and "Outlaw Plot." *Id*. The FBI did not locate responsive records with these additional search terms. *Id*.

## II. DISCUSSION

Federal Rule of Civil Procedure 56 provides, in part, that summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). I take all facts in favor of the FOIA requester, and grant summary judgment where there is no genuine issue of material fact about the adequacy of the agency's records search. S*ee Rubman v. U.S. Citizenship & Immigration Services*, 800 F.3d 381, 387 (7th Cir. 2015) (citing *Becker v. IRS*, 34 F.3d398, 405 (7th Cir. 1994)). To that end, "discovery is generally unavailable in FOIA actions" because factual disputes are rare and legal issues are limited to how the law is applied to the documents at issue. *Wheeler v. C.I.A.*, 271 F.Supp.2d 132, 139 (D.D.C. 2003); *see also CareToLive v. Food and Drug Admin.*, 631 F.3d 36, 345-46 (6th Cir. 2011) ("Claims under [FOIA] are typically resolved without discovery on the basis of the agency's affidavits.").

### 1. The Freedom of Information Act

Congress enacted FOIA to maintain an open government, ensure the existence of an informed citizenry, as well as "to check against corruption and to hold the governors accountable to the governed." *N.L.R.B. v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978). The law provides that agencies "shall make. . . records promptly available to any person" who submits a request that "(i) reasonably describes such

records and (ii) is made in accordance with [the agency's] published rules." 5 U.S.C. § 552(a)(3)(A).

To prevail at summary judgement, "the agency must show that it made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested." *Rubman v. U.S. Citizenship and Immigration Services*, 800 F.3d 381, 387 (7th Cir. 2015) (quoting *Oglesby v. U.S. Dept of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990)). Evidence that a search was reasonable and conducted in good faith generally comes in the form of "reasonably detailed nonconclusory affidavits submitted in good faith." *Id.* (quoting *Matter of Wade*, 969 F.2d 241, 249 n.11 (7th Cir. 1992). "Good faith is presumed" and "can be bolstered by evidence of the agency's efforts to satisfy the request." *Id.*

The adequacy of an agency's search is evaluated using a standard of reasonableness. *Id.* (citing *Davis v. DOJ*, 460 F.3d 92, 103 (D.C. Cir. 2006)). Reasonableness is flexible and context-dependent. *Id.* The search must be reasonable under the facts of the case; however, the search need not be "exhaustive" nor need it locate every possible document. *Powers v. United States Department of Justice*, 2006 WL 2546809 at *8 (E.D. Wis. 2006).

Plaintiff's FOIA request asks for (1) the 56-page courtroom security plan (which was created by the USMS) and (2) "any other records the FBI maintains with a nexus to the alleged plot." The USMS and FBI both presented affidavits from individuals in charge of maintaining agency records describing in detail their efforts to locate the documents plaintiff requested. Both defendants satisfied their burden to show that the

8

agencies searched their records using methods that could reasonably produce the information requested. Therefore, I grant summary judgment in favor of defendants and dismiss this case.

### a. USMS Search for the 56-page Courtroom Security Plan

The USMS conducted a search for the 56-page courtroom security plan and found nothing. The affidavit from William Bordley explained that the USMS indexes a record in their electronic database using an individual's name and personal identifiers, and as a result, they typically search files in their system using this information. The USMS conducted a search of their electronic databases using plaintiff's name and personal identifiers and could not find the security plan. Although plaintiff asserts that the USMS "intentionally narrowed the scope of [their] search" by using only his name and personal identifiers, the Seventh Circuit has previously concluded that searching an electronic database using plaintiff's name or personal identifiers was an objectively reasonable way to find documents related to him. See *Moore v. F.B.I.,* 366 F. App'x 659, 661 (7th Cir. 2010) ("[Plaintiff's] name was a reasonable search term, and the inquiry produced only three potentially responsive files that had all been destroyed years earlier. That the FBI no longer possesses those documents does not undermine the reasonableness of the agency's search.")

The USMS also searched individual office computers, shared drives, and paper files. They did not locate the security plan. Contrary to plaintiff's assertion, the USMS was not required to specifically describe "which particular paper files were searched" in order to prove that their search was reasonable. Bordley indicated that the USMS does

9

not save paper copies of a security plan once they have completed the trial associated with that plan. They have paper files only when someone decides to keep a document as a template for future use. The USMS searched the paper files they had and could not find the security plan. That is enough for me to conclude that the search was reasonable.

Lastly, plaintiff argues that the USMS search was inadequate because it did not include a search for "communications" between USMS employees regarding the security plan. Plaintiff's FOIA request only asks for a copy of the 56-page courtroom security plan, and does not ask for "communications" related to the plan. Therefore, based on information from Bordley's affidavit, I conclude that the USMS searched their records using methods that could reasonably produce the information requested.

### b. FBI Search for "Any Other Records the FBI Maintains With A Nexus to the Alleged Plot"

The FBI searched for records "with a nexus to the alleged plot" and found nothing. The affidavit from David Hardy explained that the FBI also indexes information in their electronic databases using an individual's name and personal identifiers. As discussed above, a search using plaintiff's name and personal identifiers to locate documents related to his trial was reasonable and intended to produce the records requested. Unlike the USMS, who searched all locations, the FBI limited its search to the ACS system and to manual review of index cards. But, this decision was reasonable, as the documents plaintiff requested involved incidents that occurred in 2000, and the FBI's other electronic database, Sentinel, only contains files created after 2014. The plaintiff asked the FBI to search its "tickler files" and "I-drive files" for more

information; however, the FBI no longer uses these files, and therefore it could not search those locations. From the information in Hardy's affidavit, I conclude that the FBI searched their records using methods that could reasonably produce the information requested.

Plaintiff presents two other arguments to show that the USMS and FBI exhibited "bad faith" in conducting their search: (1) neither agency contacted Joseph Tindal, Paul Kanter, or other individuals associated with the Outlaw case in conducting their search, and (2) his colleague from the Outlaw trial, Mr. Powers, made an "indistinguishable" FOIA request, and in that case the FBI found over 3,000 responsive records. Neither of these argument is persuasive.

First, FOIA only requires that the agency conduct a "reasonable" search of records. Both agencies did that. The security plan and other records plaintiff seeks are almost fifteen years old at this point. Therefore, both agencies were justified in limiting their search to the records in their possession, and were not required to contact Tindal, Kanter, or other individuals associated with the case in order to comply with FOIA.

Second, regarding Mr. Power's "indistinguishable" FOIA request to the FBI, Hardy explained that Mr. Powers was involved in two different litigations in 2000 and his FOIA request sought all records concerning the two criminal trials, in addition to a copy of the security plan. Although they were not required to, the FBI recently reviewed the 3,000 responsive records in Power's case. The responsive records pertained only to Mr. Powers, and the security plan was not among those documents. Therefore, I conclude

information; however, the FBI no longer uses these files, and therefore it could not search those locations. From the information in Hardy's affidavit, I conclude that the FBI searched their records using methods that could reasonably produce the information requested.

Plaintiff presents two other arguments to show that the USMS and FBI exhibited "bad faith" in conducting their search: (1) neither agency contacted Joseph Tindal, Paul Kanter, or other individuals associated with the Outlaw case in conducting their search, and (2) his colleague from the Outlaw trial, Mr. Powers, made an "indistinguishable" FOIA request, and in that case the FBI found over 3,000 responsive records. Neither of these argument is persuasive.

First, FOIA only requires that the agency conduct a "reasonable" search of records. Both agencies did that. The security plan and other records plaintiff seeks are almost fifteen years old at this point. Therefore, both agencies were justified in limiting their search to the records in their possession, and were not required to contact Tindal, Kanter, or other individuals associated with the case in order to comply with FOIA.

Second, regarding Mr. Power's "indistinguishable" FOIA request to the FBI, Hardy explained that Mr. Powers was involved in two different litigations in 2000 and his FOIA request sought all records concerning the two criminal trials, in addition to a copy of the security plan. Although they were not required to, the FBI recently reviewed the 3,000 responsive records in Power's case. The responsive records pertained only to Mr. Powers, and the security plan was not among those documents. Therefore, I conclude

that the responsive records in Mr. Power's case are not evidence of "bad faith" on the part of the FBI in this case.

Nothing in the record shows that defendants exhibited bad faith in conducting their searches. Therefore, I will grant summary judgment in favor of defendants and will dismiss this case.

### III. PLAINTIFF'S MOTION FOR JUDICIAL NOTICE AND MOTION TO EXPAND THE RECORD

On December 6, 2016, plaintiff filed a "motion for judicial notice and motion to expand the record" under Federal Rule of Evidence 201. ECF No. 16. He asks me to judicially notice certain statements made by Carrie Grow and David Sobonya, via email correspondence, involving inmate Harvey Power's "indistinguishable" FOIA request. *Id.* Rule 201 allows me to take judicial notice of "adjudicative" facts that are: (1) "generally known within the trial court's territorial jurisdiction," or (2) that "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b).

Plaintiff's proposed facts (*see* ECF No. 16, ¶¶ 1-5) do not fall within either category discussed above. *See Hepp v. Ultra Green Energy Servs., LLC*, No. 13 C 4692, 2014 WL 7190860, at *4 (N.D. Ill. Dec. 17, 2014) (concluding that court was unaware of any precedent which allowed it to take judicial notice of emails). This is particularly true because plaintiff seeks to use these emails to prove the truth of the matter asserted rather than to prove that the email exchange occurred. *See United States v. First Am. Title Ins. Co.*, No. 16 CV 07008, 2016 WL 7374277, at *4 (N.D. Ill. Dec. 20, 2016). Therefore, I will deny plaintiff's motion.

12

## IV. CONCLUSION

**IT IS THEREFORE ORDERED** that defendants' motion for summary judgment (ECF No. 10) is **GRANTED** and this case is **DISMISSED.**

**IT IS FUTHER ORDERED** that plaintiff's motion for judicial notice and to expand the record (ECF No. 16) is **DENIED**.

**IT IS FURTHER ORDERED** that the Clerk of Court enter judgment accordingly.

This order and the judgment to follow are final. A dissatisfied party may appeal this decision to the Court of Appeals for the Seventh Circuit by filing in this court a notice of appeal within **30 days** of the entry of judgment. *See* Federal Rule of Appellate Procedure 3, 4. I may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. *See* Federal Rule of Appellate Procedure 4(a)(5)(A).

Under certain circumstances, a party may ask me to alter or amend my judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within **28 days** of the entry of judgment. I cannot extend this deadline. *See* Federal Rule of Civil Procedure 6(b)(2). Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of the judgment. I cannot extend this deadline. *See* Federal Rule of Civil Procedure 6(b)(2).

I expect parties to closely review all applicable rules and determine, what, if any, further action is appropriate in a case.

Dated at Milwaukee, Wisconsin, this 25th day of January, 2017.

        s/ Lynn Adelman
        _____
        LYNN ADELMAN
        District Judge